# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| EDWARD SMART,<br><br>    Plaintiff,<br><br>vs.<br><br>MATT SOWLE, U.S. MARSHAL OLT and JAILER LAPETA,<br><br>    Defendants. | No. C19-2027-LTS<br><br>**MEMORANDUM OPINION AND ORDER ON DEFENDANT MATT SOWLE'S MOTION FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION AND PROCEDURAL HISTORY

This matter is before me on a motion (Doc. 51) for summary judgment by defendant Matt Sowle. Plaintiff Edward Smart has filed a resistance (Doc. 57) and Sowle has filed a reply (Doc. 61). Oral argument is not necessary. *See* Local Rule 7(c).

Smart initiated this action by filing a pro se complaint (Doc. 1-1) on May 2, 2019, seeking relief pursuant to 42 U.S.C. § 1983 for alleged violations of his Eighth Amendment rights. Defendants Sowle and the United States Marshal Service (USMS) filed motions to dismiss and defendants Bremer County Jail and Adam Spray filed a motion for summary judgment. I entered an order (Doc. 29) granting the USMS' motion to dismiss as to the agency but gave Smart 30 days to file an amended complaint alleging an individual defendant. I also granted summary judgment as to Bremer County Jail and Spray and dismissed those defendants from the case. Doc. 29. I denied Sowle's motion to dismiss and Smart's motion to appoint counsel. *Id.*

Smart filed an amended complaint (Doc. 31) on October 29, 2020, adding a claim against "U.S. Marshall Olt" in his individual capacity and "Jailer Lapeta." He also filed a motion (Doc. 35) to amend to add a claim against Olt in his individual capacity and a

motion (Doc. 36) to appoint counsel. The United States filed a motion to dismiss on behalf of "any federal employee sued in an official capacity and the United States."

I entered an order (Doc. 43) granting Smart's motion to appoint counsel and to amend his complaint and granting the motion to dismiss as to all claims against "U.S. Marshall Olt" in his official capacity. I allowed Smart's claim to proceed against that defendant in his individual capacity and against "Jailer Lapeta" with instructions for Smart's appointed counsel to advise the court if any additional service was required on either a USMS defendant or Jailer Lapeta. Doc. 43 at 3-4. Counsel did not provide any such notice. Following discovery, Sowle filed his motion for summary judgment.

## II. RELEVANT FACTS

The following facts are undisputed except where otherwise noted:

In December 2018, Smart was an inmate at the Bremer County Jail in Waverly, Iowa. Sowle, a physician's assistant, provided medical care at the jail. Smart submitted the following medical requests that were met by the following responses by Sowle:

| Request Date | Smart's Medical Request | Response Date | Sowle's Response |
|---|---|---|---|
| December 12, 2018 | "I am having pain in my stomach and my side and my urine have [sic] a real strong odor to it." | December 18, 2018 | Prescribed a Z-Pack |
| January 3, 2019 | "My legs, matress to thin [sic]." | January 8, 2019 | Prescribed 800 mg of ibuprofen three times per day |
| January 14, 2019 | "Pain in my leg is getting worse." | January 15, 2019 | Ordered an X-ray of Smart's right hip[1] |
| January 22, 2019 | "800 ibuprofin [sic] is not working, one pill is | January 22, 2019 | Increased Smart's prescribed dose of |

---

[1] Defendants allege Smart refused to go to his X-ray appointment on January 26, 2019. Smart denies this.

| | not enough pain getting worse." | | ibuprofen and prescribed Tylenol. |
|---|---|---|---|
| January 28, 2019 | "I have a rash around my waist and it painful [sic] all the way to my legs." | January 31, 2019 | Prescribed 300mg of Gabapentin three times a day. |
| February 5, 2019 | "Pain is not better now I can't swallow need medicine." | February 5, 2019 | Suggested a liquid diet for Smart's sore throat. |
| February 11, 2019 | "I have not gotten any antibiotic my [sic] shingles I got gapabentine [sic] which is diabetic nerve pay [sic], muscle spasm nerve pain nothing to do with shingles." | February 12, 2019 | Prescribed no new medication and discontinued Smart's use of Tylenol |
| February 25, 2019 | "Dr. Sowle, I spoke with another doctor and he asked me how long I had this problem and I told him since December and he said its not to [sic] late that there is a treatment out there that is 90 percent cureable [sic] that will reduce 96 percent of the pain, so I would like to have a second opinion or the medicine which is Veltrex/topical cream/ Tylenol 2pills three times a day/ narcotic pain pill at bedtime or Veltrex or a burst of steroid" | February 28, 2019 | Noted that Smart was requesting to see a dermatologist and referred the request to another officer |
| April 1, 2019 | "its [sic] been over a month and I still have | April 2, 2019 | Requested a referral for a dermatologist |

| | | | |
|---|---|---|---|
| | not seen a dermatologist yet are you going to do a follow up, Im in a lot of pain this been [sic] going on 4 months and nothing is being done about [sic]." | | |
| April 15, 2019 | "Its [sic] been past 2 weeks, I need to see a doctor for my pain its [sic] getting worse its [sic] in both legs and now my back as well." | April 16, 2019 | Referred Smart to see a dermatologist as soon as possible |
| May 20, 2019 | "Need to see doctor." | May 21, 2019 | Indicating that Smart needed a dermatologist appointment for a history of shingles, a neurology appointment for left arm numbness, and toenail snips due to having thick toenails. On May 21, 2019, a Medical Request that Smart be transported to see a dermatologist outside the facility was submitted to the USMS |
| June 3, 2019 | "need to see doctor." | June 6, 2019 | Increased Smart's dosage of Gabapentin |

Doc. 51-3 at 23-43. Smart does not dispute that Gabapentin is an appropriate treatment for neuropathic pain and that there is no effective cure for shingles.

Smart alleges that he complained of right-side pain down his legs since December 2018 and Sowle's reaction was dismissive, which left Smart with the impression that Sowle did not believe him. Smart also alleges that Sowle lied about certain aspects of his treatment, resulting in a delay of treatment. *See* Doc. 57-4 at 3 (affidavit from Smart detailing that he believes Sowle lied to him about the use of a cream for his shingles and

4

stopping Gabapentin). Sowle denies both allegations, relying on the records that show Sowle treated Smart 12 times between December 12, 2018, and May 21, 2019. He notes that each time he examined Smart, he immediately prescribed treatment and he promptly and specifically advised jail staff that Smart should see a dermatologist. Sowle also relies on two expert reports that endorse his prescribed treatment. *See id.* at 44-45, 48-49.

### III. SUMMARY JUDGMENT STANDARDS

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id.* Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id.*

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties'

5

differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

### IV. ANALYSIS

Smart asserts his claim under 42 U.S.C. § 1983, which provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 was designed

6

to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685 (1978). However, § 1983 provides no substantive rights. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Graham v. Conner*, 490 U.S. 386, 393-94 (1989); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979). Thus, "[o]ne cannot go into court and claim a 'violation of [42 U.S.C.] § 1983' — for [42 U.S.C.] § 1983 by itself does not protect anyone against anything." *Chapman*, 441 U.S. at 617. Rather, § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983; *see also Albright*, 510 U.S. at 271 (42 U.S.C. § 1983 "merely provides a method for vindicating federal rights elsewhere conferred."); *Graham*, 490 U.S. at 393-94 (same); *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980) ("Constitution and laws" means 42 U.S.C. § 1983 provides remedies for violations of rights created by federal statute, as well as those created by the Constitution.). To state a claim under § 1983, a plaintiff must establish a "(1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." *Kuha v. City of Minnetonka*, 365 F.3d 590, 606 (8th Cir. 2003), *abrogated on other grounds by Szabla v. City of Brooklyn Park, Minnesota*, 486 F.3d 385 (8th Cir. 2007).

Smart claims Sowle was deliberately indifferent to his serious medical needs and therefore violated the Eighth Amendment's ban on cruel and unusual punishments. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). He asserts that a reasonable jury could conclude Sowle lied to him, delayed treatment and ignored his pain and serious medical condition of shingles. In seeking summary judgment, Sowle argues (1) any delay in Smart's treatment did not cause substantial harm, (2) Smart cannot establish anything more than medical negligence and (3) he is entitled to qualified immunity.

### A. *Deliberate Indifference*

To demonstrate deliberate indifference,[2] an inmate must show "that (1) the inmate suffered from an objectively serious medical need, and (2) the prison official knew of the need yet deliberately disregarded it." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (citing *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)). Sowle does not argue that Smart lacked an objectively serious medical need. However, he contends that even viewing facts in the light most favorable to Smart, no reasonable jury could find he was deliberately indifferent to Smart's medical needs. Smart disagrees, arguing that deliberate indifference is a factual issue to be resolved at trial.

An official is deliberately indifferent "if he or she actually knows of the substantial risk and fails to respond reasonably to it." *Young v. Selk*, 508 F.3d 868, 873 (8th Cir. 2007). The defendant's knowledge must be two-fold; they must have recognized a substantial risk of harm and that their conduct was irresponsible considering the risk. *Shipp v. Murphy*, 9 F.4th 694, 703 (8th Cir. 2021) ("The subjective prong has two components: '[T]he evidence must show that the officers recognized that a substantial risk of harm existed and knew that their conduct was inappropriate in light of that risk.'") (quoting *Letterman v. Does*, 789 F.3d 856, 862 (8th Cir. 2015)). A plaintiff may prove the defendant's knowledge of the risk of harm through circumstantial evidence. *Letterman*, 789 F.3d at 862. For instance, a plaintiff may show the defendant "had been exposed to information concerning the risk and thus 'must have known' about it," or that

---

[2] At the outset, a claim of deliberate indifference is precluded if the record does not contain any verifying medical evidence that a delay in treatment resulted in a detrimental effect. *Coleman*, 114 F.3d at 785 (citing *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997)). Inmates who "alleg[e] a delay in treatment must present verifying medical evidence that the prison officials ignored an acute or escalating situation or that [these] delays adversely affected his prognosis." *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (internal quotation marks omitted). Smart has not presented any verifying medical evidence and thus, his claim fails on this basis. Nevertheless, I will address other aspects of his claim.

the risk was obvious the defendant knew his or her actions were inappropriate. *Letterman*, 789 F.3d at 862 (quoting *Farmer*, 511 U.S. at 842).

A plaintiff must then show a defendant deliberately disregarded the risk. *Selk*, 508 F.3d at 873. This standard is akin to criminal recklessness. *Shipp*, 9 F.4th at 703. "Although the level of blameworthiness must rise above negligence, a plaintiff does not have to show that the prison officials acted 'for the very purpose of causing harm or with knowledge that harm w[ould] result.'" *Letterman,* 789 F.3d at 862 (quoting *Farmer*, 511 U.S. at 835). "[D]eliberate indifference requires a highly culpable state of mind approaching actual intent." *Choate v. Lickhard*, 7 F.3d 1370, 1374 (8th Cir. 1993). A claimant's "mere disagreement with treatment decisions does not rise to the level of constitutional violation." *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000). If a defendant responded reasonably to a risk, he or she is not liable, even if the plaintiff ultimately suffered an injury. *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997) (citing *Farmer*, 511 U.S. at 844).

Smart states he complained of pain beginning in December 2018, which went unrecognized as shingles until a rash appeared on January 28, 2019. He was then treated on January 31, 2019, with Gabapentin. It was not until May 21, 2019, that a transfer request was submitted to USMS for Smart to see a dermatologist outside the jail. Thus, Smart has identified the following issues: (1) failure to diagnose or delay in diagnosing his pain (beginning in December 2018) as shingles, (2) delay in treatment after the appearance of his rash on January 28, 2019, and (3) delayed access to a dermatologist. I will discuss each in turn.

With regard to the delayed diagnosis of shingles based on Smart's pain beginning in December 2018, the record does not contain any evidence, medical or otherwise, that could lead a reasonable jury to conclude that Sowle was deliberately indifferent to Smart's medical needs. The record shows Sowle responded to Smart's initial complaints of pain by prescribing medication and ordering an X-ray. Sowle's experts have stated that Smart's pain would not have been due to shingles because "[p]ain from shingles develops

9

within a few days of the rash." Doc. 51-3 at 44. Smart has produced no evidence to suggest that (1) he had shingles prior to the end of January or (2) that Sowle knew or should have known that Smart had shingles prior to the appearance of the rash at the end of January. Indeed, Smart attributed his leg pain to his thin mattress in early January. *See id.* at 24. Even if the record could suggest that Sowle should have diagnosed shingles at an earlier point in time, that would amount to no more than negligence and would have had no effect on the outcome as there is no cure for shingles. *See id.* at 48-49.

"Negligent misdiagnosis does not create a cognizable claim under § 1983." *McRaven v. Sanders*, 577 F.3d 974, 982 (8th Cir. 2009). To show officials were deliberately indifferent by misdiagnosing an injury, a plaintiff must show more than gross negligence. *Allard v. Baldwin*, 779 F.3d 768, 772 (8th Cir. 2015). A claim that an official deliberately disregarded a risk is evaluated "in light of the information he possessed at the time, the practical limitations of his position and alternative courses of action that would have been apparent to an official in that position." *Letterman*, 789 F.3d at 862 (quoting *Gregoire v. Class*, 236 F.3d 413, 419 (8th Cir. 2000)). Deliberate indifference cannot be determined with the use of "hindsight's perfect vision." *Letterman*, 789 F.3d at 862. Smart has not demonstrated a genuine issue of material fact as to whether any misdiagnosis or delay in diagnosis rose to the level of deliberate indifference. *See Allard*, 779 F.3d at 772 (plaintiff's expert testimony that he should have been diagnosed with a bowel obstruction rather than constipation was sufficient only to raise a fact issue as to negligent malpractice and not deliberate indifference).

Smart's second issue is the delay between Smart's reported rash and Sowle's examination and treatment. Smart submitted a medical request on January 28, 2019, regarding the presence of a rash around his waist. Sowle examined him on January 31, 2019, diagnosed shingles and prescribed Gabapentin. Smart argues that Sowle's treatment cannot be considered "reasonable" in light of this three-day delay.

There is no evidence in the record to establish deliberate indifference based on this issue. Sowle's experts have stated that Valtrex is an antiviral drug that is often prescribed

to treat viral infections such as shingles. Doc. 51-3 at 44. It is only minimally effective, even when started immediately following the development of a rash. *Id*. To have any effect in treating shingles, it must be started within 48 hours of the appearance of a rash. *Id*. Research suggests that if started within 48 hours of the onset of the shingles rash, it can decrease the duration of blister formation but has no effect on duration of pain, *id*. at 48, which is Smart's primary complaint. *See* Doc. 57-4 at 5-6 ("now I got to live with all this pain because of his neglect."). However, Smart has not presented evidence that any earlier treatment could have lessened his pain. Moreover, as Sowle points out, there is no evidence that Sowle knew of Smart's rash earlier than January 31 or that Smart could have been seen prior to then. Deliberate indifference requires that the defendant "actually knew of but disregarded [Smart's] needs." *Dulany*, 132 F.3d at 1239. Even if Valtrex could have been effective in treating some aspect of Smart's shingles, the lack of evidence of Sowle's knowledge of the rash on January 28, 2019, is detrimental to Smart's deliberate indifference claim based on this alleged delay.

Finally, Smart claims his access to a dermatologist was delayed following his diagnosis of shingles. The record demonstrates that following Smart's shingles diagnosis on January 31, 2019, Smart first requested to see a dermatologist on February 28, 2019. Sowle then saw Smart on three other occasions and continued to document Smart's request for a referral to a dermatologist:

- April 2, 2019 – noted that a referral was needed for a dermatologist
- April 16, 2019 – Sowle noted that Smart "Needs Dermatology Appt ASAP"
- On May 21, 2019 – Sowle again noted that Smart needed an appointment with a dermatologist for history of shingles

The record shows a USMS request was completed on May 21, 2019.

There is no evidence that the referral to a dermatologist would have made any difference in the treatment of Smart's shingles as it is undisputed that there is no effective cure for shingles. There is also nothing in the record to suggest that any delay in Smart

11

seeing a dermatologist can be attributed to Sowle. Sowle repeatedly put in requests for Smart to see a dermatologist. Without any evidence that Sowle caused the delay, Smart has not demonstrated a genuine issue of material fact on which a reasonable jury could conclude that Sowle was deliberately indifferent.

Based on this record, there are no genuine issues of material fact on which Sowle could be held liable for any delays in diagnosis or treatment of Smart's shingles or the referral to a dermatologist. Indeed, the record establishes that Sowle's responses to Smart's medical requests were timely and reasonable. Sowle is entitled to summary judgment on Smart's claim of deliberate indifference.

### B. Qualified Immunity

Alternatively, Sowle argues he is entitled to qualified immunity. "Qualified immunity protects a government official from liability in a [section] 1983 claim unless his or her conduct violated a clearly established statutory or constitutional right of which a reasonable person would have known." *Vaughn v. Greene County, Ark.*, 438 F.3d 845, 849 (8th Cir. 2006) (quoting *Pool v. Sebastian County, Ark.*, 418 F.3d 934, 942 (8th Cir. 2005)). "To overcome qualified immunity, plaintiffs must demonstrate both that '(1) there was a deprivation of a constitutional or statutory right, and (2) the right was clearly established at the time of the deprivation.'" *Davis v. County of Gage, Nebraska*, 807 F.3d 931, 936 (8th Cir. 2015) (quoting *Parker v. Chard*, 777 F.3d 977, 980 (8th Cir. 2015)).

As a matter of law, Smart has failed to demonstrate that Sowle deprived him of a constitutional or statutory right. As such, and as an alternative basis for granting his motion, I find that Sowle is entitled to qualified immunity.

### C. Remaining Defendants

Smart has failed to demonstrate service, or to request service by the court, as to the remaining defendants – "U.S. Marshall Olt" and "Jailer Lapeta." *See* Doc. 43 at 3-

4 ("Within 60 days of entering an appearance, appointed counsel is directed to notify the court if any additional service is required on either a USMS defendant or Jailer Lapeta."). Federal Rule of Civil Procedure 4(m) provides:

> If a defendant is not served within 90 days after the complaint is filed, the court – on motion or on its own or after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

I will give Smart ten days from the date of this order to either provide proof of service on the two remaining defendants or to show good cause as to why these defendants have not been served.

## V. CONCLUSION

For the reasons set forth herein:

1. Defendant Matt Sowle's motion (Doc. 51) for summary judgment is **granted** and he is hereby **dismissed** from this case.

2. Within **ten (10) days** of the date of this order, Smart shall (1) provide proof of service on the two remaining defendants ("U.S. Marshall Olt" and "Jailer Lapeta) or (2) show good cause as to why these defendants have not been served. If Smart does not do so, then all claims against those two remaining defendants will be dismissed pursuant to Federal Rule of Civil Procedure 4(m).

**IT IS SO ORDERED.**

**DATED** this 14th day of June, 2022.

_____
Leonard T. Strand, Chief Judge